**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Alpine 4 Technologies Limited, | No. CV-20-01679-PHX-DJH |
| Plaintiff, | **ORDER** |
| v. | |
| Alan W Martin, et al., | |
| Defendants. | |

Pending before the Court is Defendant Alan Martin's ("Martin") Motion for Summary Judgment (Doc. 66).[1] Plaintiff Alpine 4 Technologies Limited ("Alpine") filed a Response in Opposition (Doc. 68), and Martin filed a Reply (Doc. 73). Also pending before the Court is Martin's Motion to Strike Undisclosed Allegations from Plaintiff's Response (Doc. 70).[2] Martin filed a Response in Opposition (Doc. 75), and Alpine filed a Reply (Doc. 77).

**I.   Background**

This case concerns Alpine's breach of contract claim and Martin's breach of

---

[1] Martin requested oral argument on the matter. The Court finds that the issues have been fully briefed and oral argument will not aid the Court's decision. Therefore, the Court will deny Martin's request for oral argument. *See* Fed. R. Civ. P. 78(b) (court may decide motions without oral hearings); LRCiv 7.2(f) (same).

[2] Martin also filed a Motion for Leave to File Second Supplement to its Motion to Strike, seeking to attach an exhibit that contains an appraisal of HWT's equipment. (Doc. 79 at 2). In addition, Martin filed a Motion to Strike Alpine's Response to its Motion for Leave to Attach Exhibits to Reply (Doc. 80). The Court has denied Martin's request to file a supplement to its Motion to Strike (Doc. 72), and thus finds Martin's Motion to Strike (Doc. 80) moot and Alpine's Response immaterial. *See* Fed. R. Civ. P. 12(f)(2). The Court accordingly strikes Alpine's Response (Doc. 76). *See* LRCiv 7.2(m)(1).

contract counterclaims.[3] (Doc. 1 at ¶¶ 7–11; Doc. 15 at ¶¶ 20–41). As set forth in the Complaint, Alpine alleges Defendants Martin, Jason Huffacker, and Donald G. Belcher tortiously interfered with Alpine's purchase of Martin's business, Horizon Well Testing, L.L.C. ("HWT"). (*Id.* at ¶¶ 8–9). HWT is an Oklahoma business entity engaged in fracking and related industry support services. (*Id.*)

### i. Securities Purchase Agreement

On November 30, 2016, Alpine and Martin executed a Securities and Purchase Agreement ("SPA") wherein Martin sold HWT to Alpine. (*Id.* at ¶ 12; Doc. 1-3). Alpine paid $2,200,000 in cash at closing and delivered a Secured Convertible Promissory Note in the amount of $1,500,000. (Doc. 66-2). The "Securities Consideration" also consisted of 260,000 shares of Alpine stock to be issued at or within 5 business days of closing. (Doc. 66-1 at 29). A Warrant to Purchase 75,000 Shares of Class A Common Stock also accompanied the sale and allowed Martin the right to purchase stock at $4.25 per share within the three years following the execution of the Warrant. (Doc. 66-2 at 10). At the conclusion of the purchase, HWT became a wholly-owned subsidiary of Alpine, a publicly-traded corporation headquartered in Arizona. (Doc. 1 at ¶ 23).

### ii. Renegotiated Agreements

Thereafter, the parties engaged in several renegotiations. First, on December 27, 2016, the parties executed an Addendum to the SPA, where Alpine agreed to issue another 119,403 shares of Alpine stock to Martin in exchange for a modified redemption schedule. (Doc. 66-2 at 31).

Second, on February 22, 2018, the parties executed an Amended Agreement, which amended the SPA and Warrant, and allowed Martin to purchase 75,000 shares of Class A common stock at $1.00 per share within the three years. (*Id.* at 40). The parties also entered an Amended and Restated Secured Promissory Note in the amount of $3,000,000.00 and stated it would issue Martin an additional 100,000 shares of Alpine stock. (*Id.* at 50, 35).

---

[3] Unless otherwise noted, the following facts are undisputed.

Third, in December 2018, the parties again restructured the deal, modifying the Amended Agreement and Restated Secured Promissory Note through a Letter of Intent ("LOI"). (*Id.* at 55). In the LOI, Alpine acknowledged the current note balance to be $3,160,000 ("Modified Note"). (*Id.*) This Modified Note contained the following terms, stated as follows:

> 8% interest
> 30 yr amortization
> 3 yr balloon for the amount of balance
> Same daily late fee of $575/day each and every day from due date
> Monthly max debt service of $10k on or before 21st of each month starting 1-21-2019
> In exchange for 8% rate an additional 300,000 shares of ALPP 4 stock valued today at $21,000.00

(*Id.*)

In his briefing, Martin clarifies the Modified Note is the note under which he sues. (Doc. 66 at 9). Martin says he was promised a total of 779,403 shares[4] in Alpine stock and that under Martin's expert's calculations, he is entitled to $4,471,591, including interest and late fees. (*Id.*) Alpine disputes this number. (Doc. 68 at 10).

In August 2020, the parties exchanged emails about a fourth negotiation. (Doc. 66-3 at 17–20). Therein, Martin informed Alpine he was "not willing to renegotiate the current deal" other than the balloon due date. (*Id.* at 20). Alpine's Chief Executive Officer, Mr. Kent Wilson, responded that he intended to refer the matter to counsel to review the "seller obligations of the purchase agreement." (*Id.*)

### iii. Alpine's Current Suit

On August 27, 2020, Alpine filed its Complaint, alleging Martin breached the warranties and representations of the SPA "by failing to disclose the strong possibility and eventual certainty that Defendant Huffacker, a key employee, was at risk of leaving HWT and stealing HWT assets, including HWT business, HWT employees, and forming

---

[4] Martin notes the parties have reached an agreement regarding the shares owed to him, but that the 75,000 shares owed to Martin under the Amended Warrant remain outstanding. (Doc. 73 at 1).

- 3 -

or working with another water transfer vendor."[5]  (Doc. 1 at ¶ 45).  On April 19, 2021, Martin filed an Amended Answer and Counterclaim, wherein he alleged claims for breach of contract, unjust enrichment, and breach of covenant of good faith and fair dealing. (Doc. 44).

Alpine's breach of contract claim arises from Huffacker's departure.  On March 29, 2017, Defendant Belcher organized an entity, RapidWater Resources, LLC ("RWR"), as an Oklahoma limited liability company.  (Doc. 1 at ¶ 30).  A month later, on April 24, 2017, Huffacker informed HWT's president, Terry Protto, that he was giving two weeks' notice of his intention to terminate his employment with HWT.  (*Id.* at ¶ 24).  Huffacker further informed Mr. Prottot that Huffacker was taking all water transfer employees with him in his imminent departure.  (*Id.* at ¶ 26).  Huffacker then joined RWR.  (*Id.* at ¶ 31).

On October 27, 2021, the Court dismissed Huffacker from this action for lack of personal jurisdiction.  (Doc. 57).  On December 22, 2021, Martin moved for summary judgment on Alpine's breach of contract claim and his counterclaims against Alpine. (Doc. 66).

**I.   Legal Standard**

A court will grant summary judgment if the movant shows there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).  A factual dispute is genuine when a reasonable jury could return a verdict for the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Here, a court does not weigh evidence to discern the truth of the matter; it only determines whether there is a genuine issue for trial.  *Jesinger v. Nevada Fed. Credit Union*, 24 F.3d 1127, 1131 (9th Cir. 1994).  A fact is material when identified as such by substantive law.  *Anderson*, 477 U.S. at 248.  Only facts that might affect the outcome of a suit under the governing law can preclude an entry

---

[5] Alpine brings two additional claims for relief, including interference with business expectancy and tortious interference with contract, but those claims are against Defendants Huffacker and Belcher.  (Doc. 1 at ¶¶ 53–65).  The Court dismissed Defendant Huffacker for lack of personal jurisdiction, and the Clerk granted entry of default against Defendant Belcher.  (Docs. 57, 32).  Plaintiff has not yet filed a Motion for Default Judgment.

of summary judgment. *Id.*

The moving party bears the initial burden of identifying portions of the record, including pleadings, depositions, answers to interrogatories, admissions, and affidavits, that show there is no genuine factual dispute. *Celotex*, 477 U.S. at 323. Once shown, the burden shifts to the non-moving party, which must sufficiently establish the existence of a genuine dispute as to any material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86 (1986). The evidence of the non-movant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. But if the non-movant identifies "evidence [that] is merely colorable or is not significantly probative, summary judgment may be granted." *Id.* at 249–50 (citations omitted). "A conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact." *F.T.C. v. Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1997).

**II.   Discussion**

As an initial matter, Martin moves for this Court to strike certain undisclosed allegations from Alpine's Response (Doc. 68) that had not been disclosed to Martin before its filing. (Doc. 70 at 1). The Court, however, will deny Martin's Motion to Strike as moot because the undisclosed allegations at issue there are immaterial to the Court's judgment below.

**1. Martin's Motion for Summary Judgment**

Martin moves for summary judgment on both Alpine's breach of contract claim and Martin's counterclaims for breach of contract, unjust enrichment, and breach of covenant of good faith and fair dealing. (Doc. 66 at 1). The Court will begin with Alpine's claim and then consider Martin's counterclaims.

**A. Alpine's Breach of Contract Claim**

Alpine claims Martin breached Section 4.6 of the SPA by representing "no event has occurred or circumstances exist[] that reasonably could result in any Material Adverse Effect." (Doc. 1 at ¶ 15). Alpine further claims it "has been damaged in the form of

valuable consideration deliverable under the Contract to [] Martin" and thus Alpine "should be excused and discharged from all further payment and performance obligations under the Contract." (*Id.* at ¶¶ 49, 50).

Martin argues Alpine's breach of contract claim is time-barred by the terms of the SPA. Section 8.3 "Survival and Time Limitations" states as follows:

> The Seller will have no Liability with` respect to any claim for any breach or inaccuracy of any representation or warranty in this Agreement or any other certificate or document delivered pursuant to this Agreement unless the Buyer notifies the Seller of such a claim on or before twelve months following the Closing.

(Doc. 66-1 at 31). Section 10.5 "Notices" further provides:

> [A]ny notice pursuant to this agreement must be in writing and will be deemed effectively given to another Party . . . [when delivered] to the appropriate address below . . . :
>
> If to Seller (or to the Company prior to the Closing)
>
> Alan Martin
> 2011 Ten Springs
> McAlester, OK 74501
>
> With a copy (which shall not constitute notice) to:
>
> Brett D. Cable
> Cable Law, pllc
> 438 E. Carl Albert Pkwy
> McAlester, OK 74501

(Doc. 1-4 at 14).

Here, the parties executed the SPA on November 30, 2016. (Doc. 1 at ¶ 12). Thus, Alpine must have provided notice to Martin of a breach of contract claim in the manner specified by November 30, 2017. In August 2020, Mr. Wilson, on behalf of Alpine, sent an email to Martin stating he felt Huffaker's true impact was never disclosed. (Doc. 66-1 at ¶ 21; Doc. 66-3 at 17–18). Thereafter, on August 10, 2020, Mr. Wilson informed Martin he intended to send the issue to Alpine's counsel to review the seller obligations in the

- 6 -

SPA. (Doc. 66-3 at 20). Martin argues this August 10, 2020, email is the first notice of claim he received, and because it was sent to him far beyond the 12-month limitation in the SPA, Alpine's claim is time-barred. (Doc. 66 at 12).

In Response, Alpine first argues the contractual bar in Section 8.3 of the SPA is inapplicable because the section "is found in the portion of the SPA dedicated to indemnity" and therefore "does not refer to Buyer and Seller obligations to one another." (Doc. 68 at 14). The Court does not find this argument persuasive or supported by the SPA's terms. Under Section 10.12 "Construction," the SPA states "[t]he article and section headings in this Agreement are inserted for convenience only and are not intended to affect the interpretation of this Agreement." (Doc. 1-4 at 16).

Alpine further argues that even if Section 8.3 applies, Alpine satisfied its notice obligations. To support this claim, Alpine cites to Mr. Wilson's Declaration, in which he states that he "consistently and regularly communicated with Mr. Martin by phone and email to discuss Alpine 4's ability to pay Mr. Martin because of the devastating circumstances caused by Mr. Huffacker's departure." (Doc. 68-1 at ¶ 58). This communication, Alpine argues, is why Martin helped Alpine "get its equipment back" and "modified the SPA" to allow Alpine to "turn HWT around." (Doc. 68 at 15).

The question therefore is whether Mr. Wilson's communications with Martin and Martin's alleged attempts to mitigate damages constituted "notification of a claim" under the SPA. The Court finds these communications do not. Although Mr. Wilson informed Martin he was struggling because of Huffacker's departure, Mr. Wilson did not assert that Martin breached the representations and warranties in the SPA. Moreover, even if Mr. Wilson's complaints could be construed as informing Martin of his breach, his communication "by phone and email" are insufficient notice under the SPA. When the language of a contract is plain and unambiguous "the court will not . . . expand it beyond its plain and ordinary meaning or add something to the contract which the parties have not put there." *IB Prop. Holdings, LLC v. Rancho Del Mar Apartments Ltd. P'ship*, 263 P.3d 69, 75 (Ariz. Ct. App. 2011) (internal quotations and citations omitted).

Section 10.5 of the SPA required notice of claims to be in writing and mailed to Martin's home address. Alpine shows no evidence it provided Martin with written notice under the SPA's terms. *See Matsushita Elec. Indus. Co.*, 475 U.S. at 585–86 (non-movant bears the burden of establishing existence of a genuine dispute of material fact when moving party makes prima facie showing). Mr. Wilson's Declaration indicates he communicated with Martin "by phone and email" but does not state he ever provided written mailed notice to Martin about his alleged breach. Alpine also cites no case law to support the proposition that informing Martin of its financial woes is tantamount to providing notice that Martin breached the SPA. There being no dispute of material fact that Alpine failed to provide notice to Martin of the alleged breach in accordance with the terms of the SPA, Section 8.3 of the SPA bars Alpine's claims. The Court accordingly finds that entry of summary judgment is proper on Alpine's breach of contract claim.[6]

### B. Martin's Counterclaims

Martin also moves for summary judgment on his counterclaims. (Doc. 66). In his Complaint, Martin alleges counterclaims for breach of contract, unjust enrichment, and breach of covenant of good faith and fair dealing. (Doc. 15 at ¶¶ 20–41). Although Martin moves for summary judgment on all three claims, he only makes substantive arguments as to his breach of contract claim. (Doc. 66 at 11). Accordingly, the Court summarily denies Martin's request to enter judgment on his additional two claims. As to his breach of contract claim, Martin alleges the parties entered "a binding Amended Agreement on February 22, 2018, secured by the $3,000,000.00 Note" and that Alpine "has defaulted on that note and breached the Amended Agreement by paying only seven (7) of the twenty (20) payments contemplated by the agreement."[7] (*Id.* at ¶¶ 21–22).

Alpine admits it stopped paying under the Modified Note but nonetheless contends it should not have to pay because Martin's alleged breach of the SPA's representations and

---

[6] Martin also argues Alpine should be estopped from claiming Martin breached the agreement. (Doc. 66 at 12). But the Court already found Section 8.3 bars Alpine's breach of contract claim and need not issue findings as to whether equitable estoppel applies here.

[7] As discussed, the 3,000,000.00 Note was later modified under the LOI and is now referred to as the "Modified Note." (Doc. 66-2 at 55).

- 8 -

warranties, such as the integrity of the employment and customer relationships, revenue sources, and HWT's value, discharged Alpine of its obligations. (Doc. 68 at 10–11). "[A]n uncured material breach of contract relieves the non-breaching party from the duty to perform and can discharge that party from the contract." *Murphy Farrell Dev., LLLP v. Sourant*, 272 P.3d 355, 364 (Az. Ct. App. 2012) (citing *Zancanaro v. Cross*, 339 P.2d 746, 750 (Ariz. 1959) (holding that "the victim of a minor or partial breach must continue his own performance . . . [but] the victim of a material or total breach is excused from further performance")). The Court, however, has established that Alpine's breach of contract claim against Martin is time-barred under Section 8.3. The Court therefore rejects Alpine's contention that this "total breach" justified its non-payment. Because Alpine raised no other defenses and concedes it failed to meet its obligations under the Modified Note, the Court finds liability for Martin's breach of contract claim has been established.

Nonetheless, the Court finds there are disputed facts as to the damages incurred and therefore finds summary judgment on Martin's breach of contract claim improper. Martin says he is suing under the Amended and Restated Secured Promissory Note, later modified by the LOI. (Doc. 66 at 9). In the LOI, Alpine acknowledged the current balance of the Modified Note was $3,160,000. (Doc. 66-2 at 55). According to Martin's damages expert, Mr. Tim Tribe, Alpine owes Martin $4,471,591 under the Modified Note, including the following: Principal note amount of $3,300,000; net accrued interest of $666,166; and late payment fees of $505,425. (*Id.* at 63). Mr. Tribe further explains that when the total due under the Modified Note ($4,471,591) is added to the damages related to the shares identified in the market consulting report, the resulting total damages spans between $7,659,685 and $8,913,823. (*Id.*) Alpine, however, claims Martin's expert did not consider the $62,500 in payments made by Alpine in 2019-2020. (Doc. 68 at 11). Specifically, Mr. Wilson testified that Mr. Tribe's spreadsheet omitted 1) the September 26, 2019 payment of $10,000; 2) the April 30, 2020 payment of $40,000; 3) the May 29, 2020 payment of $10,000; and 4) the July 24, 2020 payment of $2,500. (Doc. 68-1 at ¶ 91). Thus, a genuine dispute of material fact exists as to the current amount owed under

the Modified Note. (*Id.*)

**III.    Attorneys' Fees**

Pursuant to A.R.S. §§ 12-341.01 and 12-349, Martin requests its attorneys' fees and costs in defending this action because Alpine's claims arise from contractual agreements between the parties. (Doc. 66 at 17). The Court agrees Martin is entitled to seek reasonable attorneys' fees and costs under A.R.S. §§ 12-341.01 and 12-349. Martin may therefore submit an application for fees and costs that complies with the applicable rules.

**IV.    Conclusion**

Because there is no dispute of material fact that Alpine failed to provide notice to Martin of the alleged breach of contract, Section 8.3 of the SPA bars Alpine's claim and the Court will accordingly enter judgment in Martin's favor on Alpine's breach of contract claim.[8] The Court finds, however, a genuine dispute of material fact exists as to the current amount owed under the Modified Note and thus denies summary judgment on Martin's breach of contract claim. (*Id.*)

Last, the Clerk of the Court entered default against Defendant Donald Belcher on December 17, 2020, nearly two years ago. (Doc. 32). Alpine, however, has not filed a Motion for Default Judgment. The Court will grant Alpine fourteen (14) days to file a Motion for Default Judgment. Should Alpine fail to do so, Defendant Belcher will be dismissed from this action.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Martin's Motion for Summary Judgment (Doc. 66) is **granted in part** as to Alpine's breach of contract claim and **denied in part**, as to Martin's counterclaims.

**IT IS FURTHER ORDERED** that Defendant Martin's Motion to Strike Undisclosed Allegations from Plaintiff's Response (Doc. 70) is **denied as moot**. In

---

[8] In his Reply, Martin briefly asks this Court to impose sanctions under Fed. R. Civ. P. 56(h) for Alpine's bad faith submission of Mr. Wilson's Declaration. (Doc. 73 at 11). Martin does not specify if his sanctions request is against Alpine's attorney Ryan Lorenz or against Alpine. Regardless, the Court denied Martin's Motion to Strike as moot because those undisclosed allegations were immaterial to the Court's judgment.

- 10 -

addition, Defendant Martin's Motion for Leave to File Second Supplement to Motion to Strike Undisclosed Allegations (Doc. 79) is **denied as moot**.

**IT IS FURTHER ORDERED** that Defendant's Motion to Strike Plaintiff's Response to its Motion for Leave to Attach Exhibits to Reply (Doc. 80) is **granted**. The Court accordingly strikes Plaintiff's Response (Doc. 76).

**IT IS FURTHER ORDERED** that Alpine shall file its Motion for Default Judgment against Defendant Belcher within fourteen (14) days of the date of this Order. Should Alpine fail to do so, the Clerk of the Court is directed to dismiss Defendant Belcher from this action.

**IT IS FURTHER ORDRED** that Martin shall file any application for fees and costs within fourteen (14) days of the date of this Order.

**IT IS FINALLY ORDERED** that that in light of the denial of Martin's Motion for Summary Judgment on his breach of contract claim, the parties are directed to comply with Paragraph 11 of the Rule 16 Scheduling Order (Doc. 31 at 6–7) regarding notice of readiness for pretrial conference. Upon a joint request, the parties may also seek a referral from the Court for a settlement conference before a Magistrate Judge.

Dated this 29th day of September, 2022.

Honorable Diane J. Humetewa
United States District Judge